THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
WILLIE J. BIBBS, Defendant-Appellee.

Fourth District   No. 4—87—0914

Opinion filed November 10, 1988.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Gloria A. Carroll, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:
On June 29, 1987, in the circuit court of Vermilion County, defend-

ant Willie Bibbs was charged with the offense of possession of a controlled substance in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)). On November 25, 1987, a hearing was held on defendant's motion to suppress evidence illegally seized. The court granted this motion on December 18, 1987. The State appeals. We reverse.

At the suppression hearing, the evidence established the police on April 15, 1987, were executing a valid search warrant on defendant's two-room apartment looking for firearms and ammunition. Pursuant to this search, a tray was discovered in a chest of drawers. This tray had a mirrored bottom and contained a small amount of a green leafy substance, some seeds, and a single-edged razor blade. Half of the mirror was covered with a thin layer of a white powdery substance. There was no white powder on any surface but the mirror.

The two officers, Sergeant Doug Miller and Sergeant Gerald Wright, have 14 and 13 years' experience, respectively, with the police department. They have received training in the identification of illegal drugs and have had numerous opportunities to identify cannabis. They have had training in the identification of cocaine and heroin, but have not had as much experience with it. They both identified the leafy substance and seeds as cannabis. It has also been their experience and training that a mirrored surface and a razor blade are common drug paraphernalia in the use of cocaine. They believed the white powder was cocaine.

Defendant contested only the seizure of the tray and the white powdery substance. The court determined it was not readily apparent that these were contraband, and, accordingly, there was no probable cause to seize them. The State appeals this determination.

■ If the seizure of the tray and its contents is proper, it would be so under the plain-view doctrine. In order for this doctrine to apply: (1) the police must have a prior justification for the intrusion; (2) they must inadvertently come across the evidence; and (3) it must be immediately apparent to the police that the items may be evidence of a crime, contraband, or otherwise subject to seizure. (*Texas v. Brown* (1983), 460 U.S. 730, 737, 75 L. Ed. 2d 502, 510, 103 S. Ct. 1535, 1540-41; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 466, 29 L. Ed. 2d 564, 583, 91 S. Ct. 2022, 2038.) In *Arizona v. Hicks* (1987), 480 U.S. 321, 326, 94 L. Ed. 2d 347, 355, 107 S. Ct. 1149, 1153, the court held the officer must have probable cause to seize an item in plain view.

■ It is clear from the evidence that the first two requirements are met. However, the problem arises over the question of the illegal-

ity of the substance being immediately apparent. The trial court, in its suppression order, found "that insufficient evidence was produced to establish that the powder residue was, in fact, cocaine."

The United States Supreme Court was faced with a similar question in *Brown.* There the seizure involved a red balloon which was tied shut and was later determined to contain narcotics. The court first noticed that the use of the words "immediately apparent" was likely an unhappy choice of words because it implies that an unduly high degree of certainty as to the incriminating nature of the evidence is necessary. It went on to note that the seizure of property in plain view is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity. *Brown,* 460 U.S. at 741-42, 75 L. Ed. 2d at 513, 103 S. Ct. at 1543.

The court then defined probable cause, stating:

> "As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' [citation], that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. [Citation.] Moreover, our observation in *United States v. Cortez,* 449 U.S. 411, 418, [66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695] (1981), regarding 'particularized suspicion,' is equally applicable to the probable-cause requirement:
>
>> 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *Brown,* 460 U.S. at 742, 75 L. Ed. 2d at 514, 103 S. Ct. at 1543.

The court then held the police had probable cause, observing that the officer relied on his previous personal experience and what other officers had related to him concerning the fact that narcotics are frequently carried in this fashion. The court further observed that even if this fact is not generally known, a police officer is entitled to "rely on his training and experience to draw inferences and make deduc-

tions that might well elude an untrained person." *Brown*, 460 U.S. at 746, 75 L. Ed. 2d at 517, 103 S. Ct. at 1545.

Similarly, in this case, we hold the police had probable cause to seize the tray and its contents. The officers identified the leafy substance and seeds as cannabis based on their training and frequent contacts with the substance. They also believed the white powder was cocaine, based, in part, on the fact a mirrored surface and a single-edged razor blade were present. They testified that from their knowledge and training, they knew these devices were frequently used with cocaine and heroin. This is sufficient to warrant a man of reasonable caution in the belief that this may be an illegal narcotic.

■ Defendant argues that there is insufficient probable cause because the powder could be talcum powder or dust. This argument is without merit for several reasons. First, the presence of the cannabis, which defendant did not contest, would lend credence to the officers' opinion that the other substance in the same tray is illegal. Second, the evidence established the white powdery film covered less than half the mirrored surface and was only present on that surface. If the substance were talcum powder or dust, it is to be expected that it would cover more of the mirror or be present on the tray itself. Finally, there is a presence of the razor blade, which the police stated is used in the narcotic's trade. It was either an incredible coincidence that all these factors would be present together, or the suspicion of the police was correct. In either case, it is sufficient to support the seizure of the tray and its contents. All that is necessary is to have sufficient facts to show that the items *may* be contraband. In this case there were.

Reversed and remanded.

McCULLOUGH and SPITZ, JJ., concur.